STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF DAKOTA                                      FIRST JUDICIAL DISTRICT

---

Patricia Gohman,

        Plaintiff,                              **SUMMONS**

        v.

Brandl/Anderson Homes, Inc ,

        Defendant.

---

**THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANT:**

1. YOU ARE BEING SUED. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court file number on this Summons.

2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS. You must give or mail to the person who signed this Summons a written response called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the persons who signed this Summons located at: see address below.

3. YOU MUST RESPOND TO EACH CLAIM. The Answer is your written response to the Plaintiffs Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for In the Complaint, you must say so in your Answer.

4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint If you do not want to contest the claims stated In the Complaint, you do not need to respond. A Default Judgment can then be entered against you for the relief requested in the Complaint.

5. LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even If you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

                                                                                                                                                                 **EXHBIIT A**

6.   ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: September 16, 2020

**SATRE LAW FIRM**

*/s/ Eric D. Satre*

Eric D. Satre, MN Bar No. 183015
Attorney for Plaintiff
US Bank Center
101 Fifth Street East, Suite 2600
Saint Paul, MN 55101
Telephone: (651) 212-4919
Facsimile: (651) 212-4203
esatre@satrelaw.com
admin@satrelaw.com

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT |

| | |
|---|---|
| Patricia Gohman, | CASE TYPE: EMPLOYMENT |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Brandl/Anderson Homes, Inc, | |
| Defendant. | |

Patricia Gohman for her cause of action against Brandl/Anderson Homes, Inc., states and alleges as follows:

1. Plaintiff Patricia Gohman (hereinafter "Plaintiff" or "Gohman") is an adult Minnesota resident.

2. Defendant Brandl/Anderson Homes, Inc., (hereinafter "Defendant" or " Brandl/Anderson") is a Minnesota Corporation, that is located at 221 River Ridge Circle South, Suite 100, Burnsville, MN 55337.

3. Plaintiff was an employee of Defendant starting in February of 2017 when she was hired as a community manager and sales associate in the Pheasant Run Neighborhood in Lakeville, Minnesota.

4. Defendant referred to Plaintiff as a Sales Agent for Brandl/Anderson in its company directory, Plaintiff was also directed to present herself to the public as holding that position.

5. Plaintiff was also misclassified as an independent contractor for wage and hour purposes. Defendant's scheme of misclassifying its Sales Agents and Community Sales Managers

1

as independent contractors reduces its labor cost by avoiding having to withhold and remit state and federal income taxes from wages, withhold and pay Social Security and Medicare taxes, pay unemployment insurance, provide worker's compensation insurance, adhere to minimum wage and overtime standards, comply with workplace safety and health requirements, and include them in benefit plans.

6.  After Plaintiff started her employment Jennifer Sexton, (Brandl/Anderson employee) began training Plaintiff and the sales agents on a builder intranet system named IHOBA. That system was used by Defendant to enter leads, buyer & agent information and the buyer information Plaintiff collected was placed in Defendant's information management system which is consistent with the control Defendant exerted over Plaintiff.

7.  Plaintiff was eventually required to fill in and provide Weekly Time Cards to Jennifer Sexton.

8.  In addition, Plaintiff was required to produce many other reports to Defendant including model traffic count, model inspection, mandatory job Sup [Superintendent] meetings, agent showing reports & Microsoft Team meetings.

9.  Plaintiff was also required to attend mandatory sales meetings, which were scheduled outside of model time (Thursday-Monday 12-6pm). Some of the mandatory sales meetings were off- sight at design centers, lumber yards, etc.

10. At some point Plaintiff was assigned a Brandl/Anderson email address. pgohman@brandlanderson.com That email address was listed as Defendant's point of contact on all purchase agreements as well as the Brandl/Anderson website.

11. July 1, 2019, John Falk became a sales manager for Defendant. He required the time cards without exception along with many of the above reports and he also required that Plaintiff participate in "team group calls" as part of the Brandl/Anderson sales team.

12. Plaintiff's cell number & email were used on many marketing materials & Parade book.

13. Falk set specific sales expectations including first quarter expectations for the communities Plaintiff was selling in.

14. In addition, Plaintiff and the other sales Agents were required to work on spec homes and they were required to: "be the buyers and sign prints and surveys to confirm the meeting took place and that plans are what was selected on the RSO's and change orders and garage side correct." They were also required to review the survey for garage side, flat, LO or WO sites, driveway pitch and size, etc.

15. Plaintiff was required to complete that additional work as "standard procedure on all of these specs and future specs going forward to ensure they had supplied the correct information to the project managers to build the homes." In addition, she was instructed to complete the paperwork and turn it in for a file in the company office.

16. In addition, Plaintiff was required to complete plan reviews for the spec homes for pre-construction, pre drywall and final walkthrough in all the communities Plaintiff was responsible for and her written responses were required by Defendant.

17. Not only was Plaintiff required to fill out timecards on a weekly basis, but she was also required to provide traffic reports each Sunday for review by the sales office.

18. Plaintiff was also directed that she was required to report to Defendant on where each and every "prospect is at in the buying process on a continual basis" so Defendant would have that real time information on each and every contact.

19. Plaintiff was required, in Defendant's sales meetings, to be prepared to discuss items such as "the outreach program you have in place to bring organic leads to the community."

20. Defendant that Plaintiff be in the model during model hours. In addition, Plaintiff had to receive text or email for approval for showings outside model hours.

21. Plaintiff was even required to perform services like reviewing the competition's roof materials and the type of shingles they were using as part of her sales representative duties.

22. Likewise, Plaintiff was required to walk Parade Models and prepare a detailed list of items needing attention including walkways, debris removal, and paint touch up.

23. Plaintiff was directed that her co-worker from Defendant was to assist with the "selection meetings only- no other contact with customers or customers agent." [sic.]

24. Plaintiff was responsible to generate the Purchase Agreements, Miscellaneous Addendums, Change of Sales Price Addendums, and any other associated Build Documents Questions. "All paperwork associated with the build or sale [sic.] of a BA home will be directed from the BA Sales Agent to the buyer and the buyers [sic.] agent . . ."

25. Plaintiff was instructed, in writing, that she was to tell the customers she sold to that "you are the person from start to finish to answer all questions. They may have construction questions that your job supt [sic.] needs to help you with, but you are 100% in control of the customer from the initial greeting to the showing." Plaintiff was also verbally instructed that she would control the customer through the closing.

26. Defendant also required Plaintiff to:

4

a. Meet or exceed monthly sales goals established by the company;

b. Generate complete and accurate Purchase Agreements and/or Offers to purchase to be presented to the company;

c. Collect and forward construction deposits and all non-refundable deposits in accordance with the policies and procedures of Defendant;

d. Generate after-sale documentation in an accurate, timely and efficient manner;

e. Staff the model during the model hours;

f. Register each visitor to the sales center/model and maintain Defendants' customer database;

g. Oversee the condition of the sales center, models and neighborhood;

j. Communicate with Defendant's Management to assure the sales center and models are stocked with all of the marketing tools being used as a complete and accurate representation of the product being sold;

k. Maintain complete, detailed, organized and accurate record of all sales center activities. Maintain an organized and efficient buyer follow-up program between the sale and closing;

l. Attend all closings and communicate with all parties to the transaction prior to closing;

m. Conduct after closing marketing contact in conformity with Defendant;

n. Forward weekly, monthly, and quarterly reports as well as other sales related activity required by Defendant to Sales Management;

o. Provide and a high level of customer service to all sales office/model visitors;

p. Maintain a communication log for all customers; and

5

q.  Coordinate specific personal marketing and ancillary activities including attendance at scheduled sales meetings.

27. In addition, Defendant's control extended to Plaintiff's designated days off (Tuesdays & Wednesdays). On those days Plaintiff was expected to respond to emails, calls & texts mostly from Defendant's client relations manager Jennifer Sexton on non-urgent matters. If Plaintiff chose not to respond, Sexton would complain.

28. Despite the Governor's shelter in place order in March of 2020, John Falk. Vice President Sales and Marketing at Brandl Anderson Homes requirement for Plaintiff to violate the law and to carry on "business as usual."

29. As a result, during the Minnesota Shelter In Place Order Plaintiff was required, as a part of her employment, to drive to Defendant's model home during time when her position was not essential and buyers would not be able to legally shop for homes. Vice President Falk did not have to worry about compensation for Plaintiff during the time she was required to be in the model during the shelter in place order since she was only paid by commissions and he could command her to essentially work for free during that time period.

30. Plaintiff was abruptly terminated on April 30, 2020 in a one-minute phone call from Mr. Falk and although Plaintiff had done all the preparation work on several homes in the community and listed several of the spec homes under construction, she did not receive one penny for that work.

## COUNT I
## FAILURE TO REPORT REQUIRED STATEMENT OF EARNINGS BY EMPLOYER VIOLATION OF MINN. STATS. §181.032

Plaintiff alleges and incorporates herein by reference the allegations in the preceding paragraphs.

6

31. For the period Plaintiff worked for Defendant, Defendant failed to provide payment for hours worked and did not provide Plaintiff, their employee, an earnings statement containing her hours worked, either in writing or by electronic means, covering that or any pay period.

32. As a direct and proximate result of the acts alleged above, Plaintiff has suffered and continues to suffer damages including, but not limited to economic and emotional distress.

## COUNT II
## FAIR LABOR STANDARDS ACT VIOLATIONS
## 29 U.S.C. § 201 ET. SEQ., AND MINN. STATS. §§177.24 AND 177.25

Plaintiff alleges and incorporates herein by reference the allegations in the preceding paragraphs.

33. At all times relevant hereto, Defendants have been, and continue to be an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (hereinafter "FLSA"). At all relevant times, upon information and belief, Defendants have had gross operating revenues in excess of $500,000.00.

34. The FLSA requires each covered employer, such as Defendant herein, to compensate all non-exempt employees at a rate of not less than one and one half times the regular rate of pay for work performed in excess of forty hours per work week. Likewise, the Minnesota Fair Labor Standards Act requires each covered employer, such as Defendant herein, to compensate all non-exempt employees at a rate of not less than one- and one-half times the regular rate of pay for work performed in excess of forty-eight hours per work week.

35. Defendant, pursuant to its policies and practices, failed and refused to pay minimum wages for hours worked to Plaintiff for many of the periods she worked.

36. By failing to provide Plaintiff with lawful minimum wage compensation, Defendants have violated the FLSA, 29 U.S.C. § 201 et seq. and Minn. Stats. §§177.24 and 177.25.

37. The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and the MFLSA.

38. Among other remedies, Plaintiff seeks damages in the amount of her respective unpaid regular time compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper and just.

## COUNT III
## VIOLATION OF MINNESOTA STATUTES §181.101

Plaintiff alleges and incorporates herein by reference the allegations in the preceding paragraphs.

39. Defendant failed to pay Plaintiff within a 31 day period as required by Minnesota Statutes §181.101.

40. Defendants willfully intended not to abide by proper payroll accounting procedures described in preceding paragraphs.

41. By the actions described in the preceding paragraphs, fraud was committed against Plaintiff, State, and Federal agencies for which Defendant is responsible.

42. As a direct and proximate result of this failure to provide wages in a timely manner defendant is subject to a 15-day daily wage penalty as described in 181.101(a), as well as Plaintiffs fees and costs under Minn. Stats. §181.171.

## COUNT IV
## UNJUST ENRICHMENT

Plaintiff alleges and incorporates herein by reference the allegations in the preceding paragraphs.

43. The Defendants made false representations to State and Federal agencies regarding Plaintiff's status as an independent contractor resulting in unjust enrichment by all Defendants through not making the requisite employer contributions for Plaintiff and not complying with the employers' portion of contributions corresponding to a proper calculation of wages and overtime.

44. Defendant willfully intended to engage in illegal payroll accounting procedures described in preceding paragraphs. Defendant unfairly benefited from those practices at the expense at the expense of Plaintiff.

45. Defendants unjustly enriched themselves at the expense of Plaintiff by the underpayments as well as the failure to pay payroll taxes due for Plaintiff's work.

46. As a direct and proximate result of this action, Plaintiff suffered and continues to suffer loss of income and loss of future earning capacity.

### COUNT V
### MISREPRESENTATION OF EMPLOYMENT RELATIONSHIP – (MINN. STAT. § 181.722)

Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

47. Pursuant to Minn. Stat. § 181.722, subd. 1, "[n]o employer shall misrepresent the nature of its employment relationship with its employees to any federal, state, or local government unit; to other employers; or to its employees."

48. For purposes of Minn. Stat. § 181.722, subd. 1, "[a]n employer misrepresents the nature of its employment relationship with its employees if it makes any statement regarding the nature of the relationship that the employer knows or has reason to know is untrue and if it fails to report individuals as employees when legally required to do so."

49. Pursuant to Minn. Stat. § 181.722, subd. 2, "[n]o employer shall require or request any employee to enter into any agreement, or sign any document, that results in misclassification of the employee as an independent contractor or otherwise does not accurately reflect the employment relationship with the employer."

50. During the period, Plaintiff performed work for remuneration paid by Defendant, and said work was carried out subject to its direction and control. Despite the foregoing, Defendant knowingly, intentionally, and willfully misrepresented the nature of its employment relationship with Plaintiff and misclassified her as an independent contractors or otherwise failed to accurately reflect her employment relationship with Defendant.

51. By failing to properly identify and classify Plaintiff as an employee, and inaccurately classifying her as an independent contractors and/or otherwise failing to accurately reflect the employment relationship, Defendant violated of Minn. Stat. §181.722, subds. 1 and 2.

52. As a proximate result of Defendant's violations of Minn. Stat. § 181.722, Plaintiff has suffered damages as set forth herein.

### COUNT VI
### VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT (MINN. STAT. § 325D.44)

Plaintiff repeats, realleges and incorporates the preceding paragraphs as if fully set forth herein.

53. Pursuant to the Minnesota Uniform Deceptive Trade Practices Act, a business engages in a "deceptive trade practice when, in the course of business, vocation or occupation," it engages in any conduct that "creates a likelihood of confusion or misunderstanding." Minn. Stat. § 325D.44, subd. 1(13).

54. As set forth in the preceding paragraphs, in an effort to avoid providing sales representatives, including Plaintiff, the benefits and protections she is entitled to under Minnesota

10

law, Defendant has knowingly, intentionally and willfully misclassified her as an independent contractor despite the fact that the relationship between Defendant and Plaintiff was actually one of employer/employee.

55. Defendant's conduct in misclassifying Plaintiff and the other sales employees, constitutes a deceptive trade practice, and thus constitutes a violation of the Minnesota Uniform Deceptive Trade Practices Act.

56. As a proximate result of Defendant's violation of the Minnesota Uniform Deceptive Trade Practices Act, Plaintiff has suffered damages in that Defendant has obtained valuable property, money and or services from them, and has deprived her of rights and benefits guaranteed by law. Accordingly, Plaintiff is entitled to injunctive relief restraining Defendant from engaging in such deceptive trade practices in the future, and to recover the costs and attorney's fees she has incurred in obtaining such injunctive relief.

## COUNT VII
## DECLARATORY RELIEF

Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

57. An actual controversy has arisen between the Plaintiff on the one hand, and Defendant, on the other hand, relating to the following matters:

a. Whether Defendant has unlawfully misclassified Plaintiff as independent contractor, and have thus denied Plaintiff the common benefits of employee status, such as

    i. wages and overtime;

    ii. holiday pay;

    iii. workers' compensation;

    iv. unemployment insurance;

      v.      contributions to Defendant's retirement plan;

      vi.     income tax withholding; and

      vii.    meal, break and rest periods

b.    Whether Defendant has unlawfully failed to pay benefits and compensation owing in a timely manner to Plaintiff and whose employment with Defendant ended, as required by Minnesota law;

c.    What amounts Plaintiff is entitled to receive in compensation and benefits;

d.    What amounts Plaintiff is entitled to receive in interest on unpaid compensation due and owing; and

e.    What amounts Plaintiff is entitled to receive from Defendant in statutory penalties and interest.

58.    Plaintiff seeks entry of a declaratory judgment in her favor which declares Defendant's practices as heretofore alleged to be unlawful, and which provides for the recovery of all sums determined by this Court to be owed by Defendant to Plaintiff.

**WHEREFORE,** On the full Complaint Plaintiff prays for judgment against Defendant for recession and declaratory relief was well as further damages as follows:

1.    An Order enjoining Defendants from continuing the unlawful practices described herein;

2.    Declaratory relief that Plaintiff and the Class members are employees pursuant to applicable law;

3.    Compensatory damages according to proof;

4.    The 15-day wage penalty under Minn. Stats sec. 181.101.

5.    Liquidated damages pursuant to the PWA and the MFLSA and the FLSA;

6. Reasonable attorneys' fees and costs of suit;

7. Pre and post judgment interest as provided by law; and

8. Such other and further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38.01 of the Minnesota Rules of Civil Procedure, Plaintiffs hereby demands a trial by jury on all claims so triable.

Dated: September 16, 2020

SATRE LAW FIRM

*/s/ Eric D. Satre*
Eric D. Satre, MN Bar No. 183015
Attorney for Plaintiff
US Bank Center
101 Fifth Street East, Suite 2600
Saint Paul, MN 55101
Telephone: (651) 212-4919
Facsimile: (651) 212-4203
esatre@satrelaw.com
admin@satrelaw.com

## ACKNOWLEDGMENT

Plaintiff, by and through the undersigned, hereby acknowledge that sanctions, including costs and disbursements, and reasonable attorney fees may be awarded pursuant to Minnesota Statutes, sec. 549.211 et seq. to the party against whom the allegations in this pleading are asserted.

Dated: September 16, 2020

*/s/ Eric D. Satre*
Eric D. Satre (Atty. Id. # 183015)

13